Richard H. Greener, ISB No. 1191
*rgreener@greenerlaw.com*
Soo Y. Kang, ISB No. 6752
*skang@greenerlaw.com*
GREENER BURKE SHOEMAKER P.A.
The Banner Building
950 W. Bannock Street, Suite 900
Boise, Idaho 83702
Telephone: (208) 319-2600
Facsimile: (208) 319-2601

Lynn L. Sarko (*pro hac vice admission pending*)
*lsarko@kellerrohrback.com*
Michael D. Woerner (*pro hac vice admission pending*)
*mwoerner@kellerrohrback.com*
Elizabeth A. Leland (*pro hac vice admission pending*)
*bleland@kellerrohrback.com*
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
(206) 623-1900 (phone)
(206) 623-3384 (fax)

***Attorneys for Plaintiffs***

## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF IDAHO

| | |
|---|---|
| C. RICHARD TOOMEY, SALLY CREVIER, ELISABETH MIRAMS, GILLIAN MURSELL, and RICHARD YERKES, individually and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br>  v.<br><br>BRADLEY K. HOFHINES, SUMMIT RETIREMENT ADVISORS LLC, SECURITIES AMERICA, INC., SECURITIES AMERICA FINANCIAL CORPORATION, AND AMERIPRISE FINANCIAL, INC.,<br><br>     Defendants. | Case No.<br><br>CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 12 AND 15 OF THE SECURITIES ACT OF 1933, THE IDAHO UNIFORM SECURITIES ACT, AND THE IDAHO CONSUMER PROTECTION ACT<br><br>DEMAND FOR JURY TRIAL |

CLASS ACTION COMPLAINT
Page 1

1.      Plaintiffs Richard Toomey, Sally Crevier, Elisabeth Mirams, Gillian Mursell, and Richard Yerkes ("Plaintiffs") on behalf of themselves and all other persons similarly situated, allege upon the investigation made by and through their counsel, which includes, *inter alia*, a review of relevant publicly available documents, including filings made by Defendants with the Securities and Exchange Commission ("SEC"), court filings, including those filed by the court-appointed receiver Dennis Roosien ("Receiver"), offering documents, including those filed by Provident Entities, defined below, news articles, and reports concerning the Company.  This Complaint is based upon Plaintiffs' personal knowledge as to their own acts, and upon information and belief as to all other matters, based upon the aforementioned investigation.

2.      Pursuant to Section VIII of Order Granting Temporary Restraining Order, Appointing Receiver, Freezing Assets, Staying Litigation, Prohibiting the Destruction of Documents and Accelerating Discovery entered in *Securities and Exchange Commission v. Provident Royalties LLC, et al.*, No. 09-1238 (N.D. Texas filed July. 2, 2009) (the "SEC Action"), Plaintiffs do not assert claims in this Complaint against Provident Royalties, LLC ("Provident"), Provident Asset Management, LLC ("PAM"), the Provident Entities defined in paragraph 22, below, their subsidiaries or affiliates, Paul R. Melbye, Brendan W. Coughlin or Henry D. Harrison.

## I.      NATURE OF THE CASE

3.      This is a securities class action brought under the Securities Act of 1933 (the "Securities Act") on behalf of all persons or entities who purchased or otherwise acquired securities in one or more of the Provident Entities (the "Provident Securities") on or after November 25, 2006, from Defendants or any of their affiliates (the "Class").  This action is also brought under the Idaho Uniform Securities Act ("IUSA") and the Idaho Consumer Protection Act ("ICPA") on behalf of all persons or entities who purchased or otherwise acquired securities

in one or more of the Provident Entities on or after November 25, 2004, who reside within or purchased or otherwise acquired the Provident Securities within the State of Idaho, or from Defendants Bradley K. Hofhines or Summit Retirement Advisors LLC, or any of their Idaho affiliates (the "Idaho Subclass").

4.     The Provident Securities sold by Defendants were offered to investors through public solicitations, such that the offerings were not exempt from registration under Section 5 of the Securities Act, or the IUSA, notwithstanding any nominal compliance with the accredited investor exemption under Regulation D of the Securities Act.

5.     The private placement memoranda and related offering materials ("PPMs") pursuant to which the Provident Securities were offered and sold were materially false and misleading because they misrepresented and omitted material facts pertaining to the terms of the offerings and the use of funds, including that certain investments were kept afloat via improper intra-fund transfers and other material facts pertaining to the terms of the securities and the risks of investment in the Provident Securities.

6.     Plaintiffs bring this action under Sections 12(a)(1), 12(a)(2), and 15 of the Securities Act, and Sections 30-14-301 and 30-14-509 of the IUSA, against Defendants and their affiliates for their role in the offer and sale of the Provident Securities in violation of state and federal registration requirements and pursuant to materially false and misleading prospectuses. Plaintiffs also bring this action under the ICPA, I.C. § 48-601, *et seq.* against Defendants and their affiliates for their unfair and deceptive practices in the offer and sale of the Provident Securities.

## II.     <u>JURISDICTION AND VENUE</u>

7.     Plaintiffs' Securities Act claims arise under and pursuant to Sections 12(a) and 15 of the Securities Act, 15 U.S.C. §§ 77l(a)(1), 77l(a)(2), and 77o.  This Court has subject-matter

jurisdiction over those claims pursuant to 28 U.S.C. § 1331 and Section 22 of the Securities Act, 15 U.S.C. § 77v.  This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1376(a).

8.      Venue is proper in this District because one or more Defendants resides or maintain offices and conducts business in this District.  In addition, many of the acts and practices complained of herein occurred in substantial part in this judicial district and Defendants have received substantial compensation by doing business in this District.

9.      In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails and interstate telephone communications.

### III.   PARTIES

#### A.    Plaintiffs

10.     Plaintiff Sally Crevier is a resident of Idaho.  Ms. Crevier purchased Provident Securities as set forth more fully in the annexed certificate, and suffered economic damages.

11.     Plaintiff Elisabeth "Lisa" Mirams is a resident of Idaho.  Ms. Mirams purchased Provident Securities as set forth more fully in the annexed certificate, and suffered economic damages.

12.     Plaintiff Gillian Mursell is a resident of Idaho.  Ms. Mursell purchased Provident Securities as set forth more fully in the annexed certificate, and suffered economic damages.

13.     Plaintiff C. Richard Toomey is a resident of Idaho.  Mr. Toomey purchased Provident Securities as set forth more fully in the annexed certificate, and suffered economic damages.

14.     Plaintiff Richard Yerkes is a resident of Idaho.  Mr. Yerkes purchased Provident Securities as set forth more fully in the annexed certificate, and suffered economic damages.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**B.** <u>**Defendants**</u>

15.     Defendant Bradley K. Hofhines ("Hofhines") is the founder, President, and a member of Defendant Summit Retirement Advisors LLC ("Summit").  Hofhines is a resident of the State of Idaho.  Hofhines is a registered representative and agent of Defendant Securities America, Inc. ("Securities America") and sold securities in the State of Idaho as a registered representative of Securities America during the Class Period.  During the Class Period, Hofhines sold Provident Securities on behalf of and for the benefit of himself and Securities America from his Summit and Securities America office.  In connection with the sale of the Provident Securities, Hofhines made material misrepresentations and omitted to disclose material facts in violation of the law.

16.     Defendant Summit is an Idaho limited liability company.  Summit was founded in 2003 and is headquartered in Meridian, Idaho.  Summit offers securities through Defendant Securities America.  During the Class Period, Summit sold Provident Securities on behalf and for the benefit of itself and Securities America.  In connection with the sale of the Provident Securities, Summit, through its agents, employees, and/or representatives, made material misrepresentations and omitted to disclose material facts in violation of the law.

17.     Defendant Securities America is a Delaware corporation headquartered at 12325 Port Grace Boulevard, LaVista, Nebraska 68128.  Securities America is a subsidiary of Securities America Financial Corporation.  Securities America touts itself as "one of the nation's largest and most successful independent general securities broker/dealers, in part because of the wide range of investment products and services available to [its] representatives." *See* www.securitiesamerica.com.  Securities America is registered with both the Financial Industry Regulatory Authority ("FINRA") and the Securities Investors Protection Corporation ("SIPC").  Securities America is licensed to do business in the State of Idaho and identifies Bradley

CLASS ACTION COMPLAINT
Page 5

Hofhines as one of its agents.  During the Class Period, Defendant Securities America did

business in the State of Idaho through Defendants Hofhines and Summit.  During the Class

Period, Securities America sold Provident Securities.  In connection with the sale of the

Provident Securities, Securities America and its employees, agents and representatives made

material misrepresentations and omitted to disclose material facts in violation of the law.  In

addition, Securities America received, directly or indirectly, commission or similar remuneration

for solicitation of purchasers in connection with sales of Provident Securities.

18.     Defendant Securities America Financial Corporation is a Nebraska Corporation,

headquartered at 12325 Port Grace Boulevard, LaVista, Nebraska 68128.  Securities America

Financial Corporation owns and directs the management and policies of Securities America.

During the Class Period, Defendant Securities America Financial Corporation did business in the

State of Idaho through Defendants Hofhines and Summit.  Defendants Securities America

Financial Corporation and Securities America are collectively referred to herein as the

"Securities America Entities."

19.     Defendant Ameriprise Financial, Inc. ("Ameriprise") is a Delaware corporation

headquartered at 1099 Ameriprise Financial Center, Minneapolis, Minnesota 55474.  Ameriprise

offers financial planning products and services to nearly three million individual and institutional

investors, primarily in the United States.  Ameriprise is registered to do business in the State of

Idaho.  Ameriprise maintains sales offices throughout the nation, including in Idaho.  Through

Ameriprise Financial Services and other affiliates, Ameriprise sells insurance, mutual funds,

college savings plans, personal trust services, retail brokerage, and other products and services.

Ameriprise distributes its products primarily through a network of approximately 12,300

financial advisors that includes advisors and registered representatives.  Ameriprise wholly owns

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

and directs the management and policies of Defendant Securities America Financial Corporation, and therefore, Defendants Securities America.  Further, Ameriprise and the Securities America Entities share common management.  For example, Ameriprise's Chief Financial Officer, Walter S. Berman, is on the Board of Directors of Securities America, and Ameriprise's President of Financial Services, Donald Froude, sits on the Board of Directors of Securities America.

## IV.  **RELEVANT NON-PARTIES**

20.     Provident is a Delaware limited liability company with its principal place of business located in Dallas, Texas.  Provident is owned by three entities.  The majority of the interests in Provident are held by two companies, which include WPCO, LLC, an affiliate of Paul R. Melbye, and HHBC Enterprise LP, an affiliate of Brendan W. Coughlin and Henry D. Harrison.  Provident was to acquire a combination of producing and non-producing sub-surface mineral interests, working interests and production payments in real property located within the United States.  In each of the numerous Provident Entities identified in Paragraph 22 below, Provident was the beneficial owner.

21.     PAM is a Delaware limited liability company with its principal place of business in Dallas, Texas.  PAM has been registered with the SEC as a broker-dealer since March 9, 2004. Coughlin and Harrison are the principals of PAM.

22.     The Provident Entities are a series of twenty-one affiliated business entities though which Provident and PAM raised funds from investors.  The Provident Entities each maintains its headquarters in Provident's offices in Dallas, Texas.  The Provident Entities include the following:

        A.     Provident Energy 1, LP ("PE 1") is a Texas limited partnership;

        B.     Provident Resources 1, LP ("PR 1") is a Texas limited partnership;

        C.     Provident Energy 2, LP ("PE 2") is a Texas limited partnership;

CLASS ACTION COMPLAINT
Page 7

D.      Provident Energy 3, LP ("PE 3") is a Texas limited partnership;

E.      Shale Royalties II, Inc. ("Shale II") is a Delaware corporation;

F.      Shale Royalties 3, LLC ("Shale 3") is a Texas limited liability company;

G.      Shale Royalties 4, Inc. ("Shale 4") is a Delaware corporation;

H.      Shale Royalties 5, Inc. ("Shale 5") is a Delaware corporation;

I.      Shale Royalties 6, Inc. ("Shale 6") is a Delaware corporation;

J.      Shale Royalties 7, Inc. ("Shale 7") is a Delaware corporation;

K.      Shale Royalties 8, Inc. ("Shale 8") is a Delaware corporation;

L.      Shale Royalties 9, Inc. ("Shale 9") is a Delaware corporation;

M.      Shale Royalties 10, Inc. ("Shale 10") is a Delaware corporation;

N.      Shale Royalties 12, Inc. ("Shale 12") is a Delaware corporation;

O.      Shale Royalties 14, Inc. ("Shale 14") is a Delaware corporation;

P.      Shale Royalties 15, Inc. ("Shale 15") is a Delaware corporation;

Q.      Shale Royalties 16, Inc. ("Shale 16") is a Delaware corporation;

R.      Shale Royalties 17, Inc. ("Shale 17"), is a Delaware corporation;

S.      Shale Royalties 18, Inc. ("Shale 18") is a Delaware corporation;

T.      Shale Royalties 19, Inc. ("Shale 19") is a Delaware corporation;

U.      Shale Royalties 20, Inc. ("Shale 20") is a Delaware corporation;

23.     Paul R. Melbye ("Melbye") was, at all relevant times, the Founder and Manager of Provident, Principal of each Provident Entity and Principal in charge of operations for Provident.  He resides in Dallas, Texas.

CLASS ACTION COMPLAINT
Page 8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

24.     Brendan W. Coughlin ("Coughlin") was, at all relevant times, the Founder and Manager of Provident, a Managing Partner of PAM and a Principal of each Provident Entity.  He resides in Dallas, Texas.

25.     Henry D. Harrison ("Harrison") was, at all relevant times, the Founder and Manager of Provident, a Managing Partner of PAM and a Principal of each Provident Entity.  He resides in Dallas, Texas.

## V.     <u>PLAINTIFFS' CLASS ACTION ALLEGATIONS</u>

26.     Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of all persons or entities who purchased or otherwise acquired Provident Securities on or after November 25, 2006 from Defendant Securities America, Inc. or any of its affiliates (the "Class").

27.     Plaintiffs also bring this action on behalf of all persons or entities who purchased or otherwise acquired securities in one or more of the Provident Entities on or after November 25, 2004, who reside within or purchased or otherwise acquired the Provident Securities within the State of Idaho, or from Defendants Bradley K. Hofhines or Summit Retirement Advisors LLC, or any of their Idaho affiliates (the "Idaho Subclass").

28.     Excluded from the Class and the Idaho Subclass are Defendants and the Relevant Non-Parties identified above, their officers, directors, and any person, firm, trust, corporation, officer, director or other individual or entity in which any Defendant or Relevant Non-Party has a controlling interest or which is related to or affiliated with any of the Defendants or Relevant Non-Parties, and the legal representatives, agents, affiliates, heirs, successors-in-interest or assigns of any such excluded person or party.

29.     The members of the Class and the Idaho Subclass are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to

CLASS ACTION COMPLAINT
Page 9

Plaintiffs at this time and can only be ascertained through appropriate discovery, Plaintiffs estimate that the number of Class members exceeds several thousand.  Plaintiffs are informed and believe that a significant portion of these sales were made to members of the Idaho Subclass. Record owners and other members of the Class and the Idaho Subclass may be identified from records maintained by the Defendants and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions

30.    Plaintiffs' claims are typical of the claims of the members of the Class and Idaho Subclass as all members of the Class and Idaho Subclass are similarly affected by Defendants' wrongful conduct in violation of state and federal law that is complained of herein.

31.    Plaintiffs will fairly and adequately protect the interests of the members of the Class and the Idaho Subclass and have retained counsel competent and experienced in class and securities litigation.

32.    Common questions of law and fact exist as to all members of the Class and the Idaho Subclass and predominate over any questions solely affecting individual members of the Class and the Idaho Subclass.  Among the questions of law and fact common to the Class are:

A.    Whether the Provident Securities were offered and sold in violation of the registration requirements of the Securities Act;

B.    Whether the PPMs provided to Plaintiffs and the members of the Class constituted a "prospectus" for purposes of Plaintiffs' claims

C.    Whether the PPMs for the Provident Securities contained misstatements of material fact or omitted to state material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

D.      Whether the federal securities laws were violated by Defendants' acts as alleged herein;

E.      Whether the broker-dealers who participated in the offer and sale of the Provident Securities acted in concert as agents;

F.      Whether Ameriprise controlled Securities America; and

G.      To what extent the members of the Class have sustained damages and the proper measure thereof.

33.     Among the questions of law and fact common to the Idaho Subclass are:

A.      Whether the Provident Securities were offered and sold in violation of the registration requirements of the IUSA;

B.      Whether the PPMs provided to Plaintiffs and the members of the Idaho Subclass constituted a "prospectus" for purposes of Plaintiffs' claims

C.      Whether the PPMs for the Provident Securities contained misstatements of material fact or omitted to state material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

D.      Whether the IUSA was violated by Defendants' acts as alleged herein;

E.      Whether the ICPA was violated by Defendants' acts as alleged herein;

F.      Whether the broker-dealers who participated in the offer and sale of the Provident Securities acted in concert as agents;

G.      Whether Ameriprise controlled Securities America; and

H.      To what extent the members of the Idaho Subclass have sustained damages and the proper measure thereof.

34.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all class members is impracticable. Furthermore, as the damages suffered by individual Class and Idaho Subclass members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class and Idaho Subclass to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## VI.     SUBSTANTIVE ALLEGATIONS

### A.     The Provident Securities Integrated Offering

35.     Provident is a company that purportedly holds oil and gas interests, working interests and royalty interests in oil and gas properties in the United States.

36.     From at least September 2006 through January 2009, Provident and the Defendants solicited investments and sold preferred stock and limited partnership interests through a series of private placement offerings by the 21 Provident Entities. Attached hereto as Exhibit A is a list of offerings and the approximate amount invested in each.

37.     The Provident Securities were sold to the public through a number of broker-dealers nationwide.

38.     In all, over 7,700 persons and entities located throughout the country invested approximately $485 million in the series of Provident Securities offerings of preferred stock and limited partnership interests.

39.     The offerings by the Provident Entities, whether they were limited partnerships or corporations, had the same investment purpose and took place continuously over a 30 month period. The periods of many of the offerings overlapped others. Provident limited each offering to 500 investors and to varying dollar amounts, and as an offering would approach one of those limits, the next Provident Entity would be created.

40.     While there were a number of different entities that offered securities through private placements, in reality, the offering constituted a single plan of financing.  The offering documents and terms are very similar across all of Provident's offerings.

41.     Thus, the offerings for all of the Provident Securities were structured and effected in a similar manner, and constituted a single, integrated offering pursuant to Rule 502 of Regulation D, 17 C.F.R. § 320.501-502.  Specifically, and as set forth in more detail herein, the offerings for the Provident Securities formed part of a single plan of financing, involved the issuance of the same class of securities, were made at or about the same time, involved the same type of consideration received, and were for the same general purposes.

42.     The Provident Entities claimed that the Provident Securities were exempt from registration pursuant to Rule 506 of Regulation D of the federal securities laws.  However, as set forth herein, Defendants solicited a number of unaccredited investors and the securities were not otherwise exempt from registration.

**B.     The Provident Entities' Purported Business Operations**

43.     Provident promised high returns from an oil and gas investment program.

44.     Specifically, investors were told most of their investments would be used by each individual Provident Entity to purchase oil and gas assets for that corresponding entity.   The Provident Entities would purportedly use the proceeds from the sale of the Provident Securities to acquire real estate, oil and gas leases and mineral interests, and conduct exploration and development activities.

45.     According to the PPMs, the funds raised in each offering were to be deposited into an account of that particular entity and were to become assets of that entity, which would make investments in oil and gas properties only for that entity.  Each PPM contained an estimate of the use of the offering proceeds.  The typical PPM represented that approximately 86% of

subscription proceeds were to be allocated to oil and gas investments.  Only a small portion of the invested funds were to be used to pay commissions to the selling broker-dealers and the wholesalers.

46.    The Provident Securities offering documents contained the following representations, among others:

A.    The investment would be used by each Individual Provident Entity to purchase oil and gas assets for that corresponding entity;

B.    The proceeds of each offering were to be deposited into an account of the individual Provident Entity and constituted assets of that Entity;

C.    Dividends were to be paid from revenues, primarily from the sale of assets; and

D.    Revenue would also be received from production on the oil and gas leases acquired by each Provident Entity.

47.    Investors were further advised that dividends or returns would begin to accrue on the first day following the date of issuance but would be paid beginning on the last day of the fourth full month following the date of issuance.  These payments were delayed allegedly so that the Provident Entity had time to invest the funds in oil and gas properties and begin to receive the revenue needed to pay returns.

48.    Investors were specifically advised that the proceeds of one Provident Securities offering would not be used for the payment of dividends in another offering.

**C.    The Sale of the Provident Securities**

49.    The Provident Securities in the form of preferred stock were underwritten by PAM on a best efforts basis as a managing dealer under a placement agreement with each Provident Entity.

CLASS ACTION COMPLAINT
Page 14

50.     Although PAM made some direct retail sales of securities through the Provident Securities offerings, PAM largely solicited retail broker-dealers to enter into placement agreements for each Provident Securities offering, and those retail broker-dealers sold shares of or other investments in the Provident Entities to retail investors nationwide.

51.     The PPMs included an Exhibit C, showing prior activities of other Provident Securities offerings. According to Exhibit C, investors in Provident programs had received distributions of revenues.  For example, Exhibit C from the Shale 20, Inc. PPM indicates that over $16,000,000 in revenue had been paid to investors in Shale II, Shale 3, Shale 4, Shale 5, Shale 6, Shale 7, Shale 8, and Shale 9.  In fact, Provident lacked the revenue to make such payments unless funds from new investors were used to pay earlier investors, which is exactly what occurred.  A copy of that document is attached hereto as Exhibit B.

52.     PAM's wholesalers marketed the Provident Securities offerings to broker-dealers, including Defendants, as income producing investments, stressing a sound track record of dividend payments.

53.     The Provident Securities offerings occurred as follows:

A.     During September 2006, Shale II filed with the SEC a Form D, Notice of Sale of Securities Pursuant to Regulation D, Section 4(6), and/or Uniform Limited Offering Exemption, by issuer "Shale Royalties II, Inc."  The total aggregate offering price of the securities to be sold was listed at $10 million.  Shale II raised approximately $9.7 million from 177 investors.

B.     During January 2007, Shale 3 filed with the SEC a Form D, Notice of Sale of Securities Pursuant to Regulation D, Section 4(6), and/or Uniform Limited Offering Exemption, by issuer "Shale Royalties 3 LLC."  The total aggregate offering price of the

CLASS ACTION COMPLAINT
Page 15

securities to be sold was listed at $20 million.  Shale 3 raised approximately $20 million from 339 investors.

C.  During February 2007, PR 1 filed with the SEC a Form D, Notice of Sale of Securities Pursuant to Regulation D, Section 4(6), and/or Uniform Limited Offering Exemption, by issuer "Provident Resources 1, LP."  The total aggregate offering price of the securities to be sold was listed at $20 million.  PR 1 raised approximately $9.1 million from 214 investors.

D.  During March 2007, Shale 4 filed with the SEC a Form D, Notice of Sale of Securities Pursuant to Regulation D, Section 4(6), and/or Uniform Limited Offering Exemption, by issuer "Shale Royalties 4, Inc."  The total aggregate offering price of the securities to be sold was listed at $25 million.  Shale 4 raised approximately $27.4 million from approximately 487 investors.

E.  During March 2007, PE 1 filed with the SEC a Form D, Notice of Sale of Securities Pursuant to Regulation D, Section 4(6), and/or Uniform Limited Offering Exemption, by issuer "Provident Energy 1, LP."  The total aggregate offering price of the securities to be sold was listed at $20 million.  PE 1 raised approximately $7.2 million from 131 investors;

F.  During September 2007, Shale 5 filed with the SEC a Form D, Notice of Sale of Securities Pursuant to Regulation D, Section 4(6), and/or Uniform Limited Offering Exemption, by issuer "Shale Royalties 5, Inc."  The total aggregate offering price of the securities to be sold was listed at $50 million.  Shale 5 raised approximately $29.94 million from 499 investors.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

G.      During November 2007, Shale 6 filed with the SEC a Form D, Notice of Sale of Securities Pursuant to Regulation D, Section 4(6), and/or Uniform Limited Offering Exemption, by issuer "Shale Royalties 6, Inc." The total aggregate offering price of the securities to be sold was listed at $30 million. Shale 6 raised approximately $27.4 million from 493 investors.

H.      During November 2007, PE 2 filed with the SEC a Form D, Notice of Sale of Securities Pursuant to Regulation D, Section 4(6), and/or Uniform Limited Offering Exemption, by issuer "Provident Energy 2, LP." The total aggregate offering price of the securities to be sold was listed at $30 million. PE 2 raised approximately $25.9 million from approximately 498 investors.

I.      During January 2008, Shale 7 filed with the SEC a Form D, Notice of Sale of Securities Pursuant to Regulation D, Section 4(6), and/or Uniform Limited Offering Exemption, by issuer "Shale Royalties 7, Inc." The total aggregate offering price of the securities to be sold was listed at $35 million. Shale 7 raised approximately $31.3 million from 494 investors.

J.      During January 2008, Shale 8 filed with the SEC a Form D, Notice of Sale of Securities Pursuant to Regulation D, Section 4(6), and/or Uniform Limited Offering Exemption, by issuer "Shale Royalties 8, Inc." The total aggregate offering price of the securities to be sold was listed at $35 million. Shale 8 raised approximately $31.8 million from 497 investors.

K.      During February 2008, Shale 9 filed with the SEC a Form D, Notice of Sale of Securities Pursuant to Regulation D, Section 4(6), and/or Uniform Limited Offering Exemption, by issuer "Shale Royalties 9, Inc." The total aggregate offering

price of the securities to be sold was listed at $35 million.  Shale 9 raised approximately $33.2 million from 499 investors.

L.      During April 2008, Shale 10 filed with the SEC a Form D, Notice of Sale of Securities Pursuant to Regulation D, Section 4(6), and/or Uniform Limited Offering Exemption, by issuer "Shale Royalties 10, Inc."  The total aggregate offering price of the securities to be sold was listed at $35 million.  Shale 10 raised approximately $29.1 million from 496 investors.

M.      During April 2008, Shale 12 filed with the SEC a Form D, Notice of Sale of Securities Pursuant to Regulation D, Section 4(6), and/or Uniform Limited Offering Exemption, by issuer "Shale Royalties 12, Inc."  The total aggregate offering price of the securities to be sold was listed at $35 million.  Shale 12 raised approximately $34.69 million from 488 investors.

N.      During August 2008, Shale 14 filed with the SEC a Form D, Notice of Sale of Securities Pursuant to Regulation D, Section 4(6), and/or Uniform Limited Offering Exemption, by issuer "Shale Royalties 14, Inc."  The total aggregate offering price of the securities to be sold was listed at $35 million.  Shale 14 raised approximately $31.1 million from approximately 446 investors.

O.      During July 2008, Shale 15 filed with the SEC a Form D, Notice of Sale of Securities Pursuant to Regulation D, Section 4(6), and/or Uniform Limited Offering Exemption, by issuer "Shale Royalties 15, Inc."  The total aggregate offering price of the securities to be sold was listed at $35 million.  On information and belief, Shale 15 raised approximately $27.5 million from 458 investors.

CLASS ACTION COMPLAINT
Page 18

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

P.      During August 2008, Shale 16 filed with the SEC a Form D, Notice of Sale of Securities Pursuant to Regulation D, Section 4(6), and/or Uniform Limited Offering Exemption, by issuer "Shale Royalties 16, Inc." The total aggregate offering price of the securities to be sold was listed at $35 million. On information and belief, Shale 16 raised approximately $31.2 million from approximately 466 investors.

Q.      During August 2008, Shale 17 filed with the SEC a Form D, Notice of Sale of Securities Pursuant to Regulation D, Section 4(6), and/or Uniform Limited Offering Exemption, by issuer "Shale Royalties 17, Inc." The total aggregate offering price of the securities to be sold was listed at $35 million. On information and belief, Shale 17 raised approximately $30.5 million from approximately 492 investors.

R.      During October 2008, Shale 18 filed with the SEC a Form D, Notice of Sale of Securities Pursuant to Regulation D, Section 4(6), and/or Uniform Limited Offering Exemption, by issuer "Shale Royalties 18, Inc." The total aggregate offering price of the securities to be sold was listed at $40 million. On information and belief, Shale 18 raised approximately $24.4 million from 306 investors.

S.      During October 2008, Shale 19 filed with the SEC a Form D, Notice of Sale of Securities Pursuant to Regulation D, Section 4(6), and/or Uniform Limited Offering Exemption, by issuer "Shale Royalties 19, Inc." The total aggregate offering price of the securities to be sold was listed at $40 million. On information and belief, Shale 19 raised approximately $12.2 million from 194 investors.

T.      During November 2008, Shale 20 filed with the SEC a Form D, Notice of Sale of Securities Pursuant to Regulation D, Section 4(6), and/or Uniform Limited Offering Exemption, by issuer "Shale Royalties 20, Inc." The total aggregate offering

price of the securities to be sold was listed at $40 million. On information and belief, Shale 20 raised approximately $6.8 million from 91 investors.

U.    During December 2008, PE 3 filed with the SEC a Form D, Notice of Sale of Securities Pursuant to Regulation D, Section 4(6), and/or Uniform Limited Offering Exemption, by issuer "Provident Energy 3 LP." The total aggregate offering price of the securities to be sold was listed at $30 million. On information and belief, PE 3 raised approximately $120,000 from four investors.

V.    During December 2008, Shale 21 filed with the SEC a Form D, Notice of Sale of Securities Pursuant to Regulation D, Section 4(6), and/or Uniform Limited Offering Exemption, by issuer "Shale Royalties 21, Inc." The total aggregate offering price of the securities to be sold was listed at $40 million.

54.    Ultimately, Plaintiffs and members of the Class and Idaho Subclass invested approximately $485 million in unregistered Provident Securities.

55.    The Provident Securities purchased by Plaintiffs and the other members of the Class and Idaho Subclass were purportedly issued to fund the purchase of oil and gas investments.

56.    The Provident Securities were sold as private placements, and potential investors were to receive a PPM describing the terms of the investment, the nature of, and limitations on, the loans and investments that were be made with the proceeds.

57.    Defendants Hofhines, Summit, and Securities America and their affiliates were sellers within the meaning of the Securities Act because they solicited the purchase of Provident Securities by Plaintiffs and other members of the Class, including the Idaho Subclass.

58.     Defendants Hofhines and Securities America were actively involved in the sale and monitoring of Provident Securities to Plaintiffs and other members of the Class and the Idaho Subclass.  For example,

A.     Cover letters from Provident to Provident Securities investors purporting to accept and enclose an executed Subscription Agreement, reflect that copies were provided to the respective broker-dealers, including, in the case of Plaintiffs, Defendants Hofhines and Securities America, Inc.

B.     The "Representation by Selected Dealer" section of Plaintiffs' Subscription Agreements were executed by Hofhines, as "Selling Representative," on behalf of Securities America.

C.     Check receipts were issued by Securities America, Inc., Bradley Hofhines, and notified recipients that "[c]hecks and certificates received at branch offices of Securities America, Inc., are received on behalf of Securities America, Inc., or its affiliates."

59.     The offer of Provident Securities included numerous solicitations of unaccredited investors, including sales pitches for Provident Securities delivered at seminars, meetings and dinners to which attendees were invited without reference to their status as accredited investors. Written materials offering Provident Securities were widely disseminated and made available to the general public.  As a consequence of the use of these and other mass marketing techniques, more than 35 unaccredited investors were offered and sold Provident Securities, such that any exemption from registration under Rule 506 of Regulation D, 17 C.F.R. §§ 230.501-230.508 was unavailable.

CLASS ACTION COMPLAINT
Page 21

60.     Defendants Hofhines, Summit, and Securities America and their affiliates offered and sold Provident Securities to persons who did not have knowledge, thereby necessitating the protection of the registration requirements of the Securities Act.  Such persons lacked the sophistication and economic means to fend for themselves in obtaining the kind of information which registration would disclose.

61.     Defendants were motivated at least in part by a desire to serve their own financial interests.  Defendants Hofhines, Summit, and Securities America and their affiliates received financial rewards, including but not limited to substantial commissions on the sales of Provident Securities.

62.     A significant red flag, which was ignored by Defendants, is the fact that none of the Provident Entities had audited financial statements.

63.     Defendants knew, recklessly failed to investigate, or chose to ignore the materially false and misleading information that accompanied the Provident Securities, as well as the fact that the securities were offered to the general public in violation of the registration requirements of the Securities Act.

**D.     The Terms of the Provident Securities**

64.     Returns on investment in the Provident Securities were to range from 14-18% per annum.

65.     The Provident Entities denominated as Shale II through 20 offered two series of non-convertible redeemable cumulative preferred stock.  Each share of stock was offered for $5,000 through a PPM.

66.     At the outset of the Provident Securities offerings, dividends on each share of Series A preferred stock were to accrue at the rate of 1.5% per month.  In later offerings,

CLASS ACTION COMPLAINT
Page 22

dividends on each share of Series B preferred stock were to accrue at the rate of 1.25% per month.

67.     Series A preferred stock was redeemable at the end of 24 or 36 months and Series B preferred stock at the end of 24 months.  Dividends were to be paid four months in arrears, and then monthly on the last day of each month.

68.     Most of the Provident Securities offerings provided for the payment to investors of a preferred stock dividend monthly, beginning four months after the initial investment.  The stated returns ranged from 14 to 18% per year, depending of the length of the investment and when a customer invested.  Provident Entities Shale II through Shale 5 offered Class A shares which paid 1.5% per month for 24 months. Entities Shale 6 through Shale 17 issued Class A shares which paid 1.5% per month for 36 months and Class B shares which paid 1.25% per month for 24 months. Shale 18 through Shale 20 issued Class A shares which paid 1.375% per month for 48 months, and Class B shares which paid 1.167% per month for 36 months.

69.     During the Class Period, Provident reduced the amount payable for dividends on Series A preferred stock to 1.375% and on Series B preferred stock to 1.167%.  At the same time, the PPMs for these Provident Entities changed the terms to 48 months for Class A Preferred Shares and 36 months for Class B Preferred Shares.

70.     Other affiliated Provident Entities included PE 1, PE 2, PE 3, and PR 1. These entities offered limited partnership interests on substantially the same terms as the other Provident Entities.

71.     PE 1, PE 2, and PE 3 offered $5000 units.  The PPMs for these entities provided that "the limited partners and investor general partners will receive 95% of net cash flow until payback.  After payback, the investors will receive 50% of net cash flow."

72.     PR 1 offered $5,000 units.  The PPM for this entity provided that "purchasers of units in the partnership will participate in profits and losses and distributions as follows: 85% to the Investor Partners before Payout and 15% to the Managing Partner before Payout, 30% to the Investor Partners after Payout and 65% to the Managing partner after payout and 5% Okoboji Financial after Payout.

73.     The offerings by the Provident Entities were virtually identical in their terms, had the same investment purpose, and took place continuously over a 30 month period. The periods of many of the offerings overlapped others.

74.     Provident limited each offering to 500 investors and to varying dollar amounts, and as an offering would approach one of those limits, the next Provident Entity would be created.

75.     The Provident Entities each claimed an exemption from the registration of its securities pursuant to Rule 506 of Regulation D of the federal securities laws.

76.     The final Provident Entity, Shale 20, began selling shares during late November 2008.  Approximately $7 million was invested in Shale 20 through January 22, 2009, when Provident discontinued accepting investments, as discussed below. According to the Shale 20 PPM, investors could purchase Preferred Stock Series A or B for $5,000 per share, with a minimum investment of $50,000.

77.     Dividends of Shale 20 Preferred Stock Series A were to accrue interest at 1.375% per month (16.5% per annum), commencing at the date of sale, and were to be paid in cash beginning on the last day of the fourth full month following the date of investment.  Shares of Preferred Stock Series A were to be redeemed four years after the date of issuance.

CLASS ACTION COMPLAINT
Page 24

78.     Dividends of Shale 20 Preferred Stock Series B were to accrue interest at 1.167% per month (14% per annum), commencing at the date of sale, and were to be paid in cash beginning on the last day of the fourth full month following the date of investment. Shares of Preferred Stock Series B were to be redeemed three years after the date of issuance.

79.     Provident intended to raise a maximum of $40 million through Shale 20, with no minimum dollar amount.  According to the Use of Proceeds of Offering section of the Shale 20 PPM, approximately 86% of the gross proceeds raised were to be invested in oil and gas investments.  The remaining 14% was to be used to pay offering expenses and commissions.

80.     Exhibit C to the Shale 20 PPM (attached as Exhibit B hereto) was a table entitled "Provident Royalties, LLC Prior Activities — Table 1, Experience in Raising Funds (Status as of August 31, 2008)." One of the columns, Dividends and Distributions Paid to Date, shows returns in the amount of $17,013,603 paid to investors in prior Provident programs. Shale 20 PPM This document purported to provide potential Shale 20 investors with a proven track record reflecting Provident's ability to pay dividends and returns, giving the clear indication that prior Provident offerings were profitable and/or had substantial surpluses of revenue.

**E.     Investors Were Not Told of the True Nature of the Provident Entities and Securities**

81.     The statements above, including that returns would be paid from revenues generated from investments in oil and gas properties and that that the proceeds of one Provident Securities offering would not be used for the payment of dividends in another offering were materially false and misleading.

82.     In reality, although a portion of the proceeds of the offerings may have been used for the acquisition and development of oil and gas exploration and development activities, investor funds were also commingled and investor funds raised in later offerings were used to pay "dividends" and "returns of capital" to earlier Provident investors.  Indeed, instead of

CLASS ACTION COMPLAINT
Page 25

investing the funds represented, investors' returns were paid from recently-received capital from new investors.

83.     Plaintiffs and the other members of the Class and the Idaho Subclass were not told that Provident needed new investors to pay expenses for the earlier Provident Securities offerings and to pay earlier investors dividends promised to them by the Provident Entity PPMs.  Nor were these investors advised that their funds would be commingled with funds derived from the other Provident Securities offerings and that the proceeds from later private placement offerings would be used to pay promised returns to earlier investors.

84.     In an Information Memorandum prepared by Raymond James & Associates, Inc. ("Raymond James"), which was based upon information supplied by Provident and furnished for use by prospective parties in evaluating Provident's assets, Raymond James reported steadily decreasing oil and gas revenue from Provident's properties.  The Raymond James report cited a decrease in total revenue from $937,527 in August 2008, to $488,441 in October 2008.

85.     Furthermore, an analysis by the SEC of the use of proceeds of several of the Provident Securities offerings indicates that less than 50% of the proceeds were actually used to purchase oil and gas properties and that funds invested in later Provident Entities were used to pay returns or principal to investors in earlier Provident Entities.

86.     According to the SEC's investigation, as supported by publicly available documents, Provident deposited the proceeds from the offerings into a bank account for the Provident Entity in which the investor purchased stock or a limited partnership interest.  Prior to July 2008, money moved freely from one Provident Entity account to another as required for the payment of dividends or to fund operations.  After July 2008, invested funds were initially

deposited into the account for the Provident Entity in which the investor purchased securities and then was swept into one of Provident's operating accounts.

87.     During the Class Period, Provident's accounting system was inadequate and Provident and the Provident Entities had few, if any, internal controls in place.

88.     Provident principal Harrison has testified that the source of certain securities redemptions cannot be identified because of inadequate internal controls, that investor payments could have been made from "money raised from the investors," and, further, that Provident's accounting system was approximately three months behind in its calculations of the sources and uses of investor funds.   Henry Harrison Dep., June 24, 2009, at 130:23-131:2, 148:1-148:21.

89.     In addition, Harrison testified that Provident used funds from multiple sources to pay dividends.  Specifically, "[t]he dividends for the offering were paid from all moneys (sic). And this was not a production program where the revenue from the wells was used to pay dividends.  All moneys were used." *Id.* at 124:22-25.  Harrison admitted that dividends could come from financing, from sale of assets, from working interest income, and from royalty income: "[Dividends] could also come from capital that was in the entity, which could have been money raised from investors." *Id.* at 130:25-131:2

90.     Bank records and internal Provident business records show that as early as October 2007, Provident was comingling investor funds between the various Provident Entities and using new investor funds to pay distributions to prior investors.  For example, according to the SEC's investigation:

    A.     In October 2007, $2.2 million was transferred from a Shale 5 bank account maintained at Sovereign Bank to an account in the name of Shale 4 also held at Sovereign, and a portion of those funds were used to pay Shale 4 investor dividends.

B.      On January 3, 2008, $88,000 was transferred from the Shale 4 Sovereign bank account to the Shale 3 Sovereign bank account.  Immediately prior to the transfer, the Shale 3 account had a balance of $36.  Immediately after the deposit, Shale 3 made payments to investors totaling $86,941; the $88,000 from Shale 4 was the only source of funds for the payment.

C.      A document obtained from a Provident sales manager, titled "Provident Royalties, LLC, Guidelines for Transactions Between Affiliates" addresses transactions between Provident's investment vehicles.  The effective date is October 14, 2008. The document states, in part, "Loans will not be made from one affiliate to another affiliate to enable the borrowing affiliate to pay dividends or distributions to investors."

D.      A spreadsheet prepared by Provident for the month of December 2008 shows $11,250,000 received from new investors moved from the original Provident Entity into two other Provident accounts.

E.      During December 2008, $9,500,000 was transferred into Provident's primary bank account ("PRI") and $1,750,000 was transferred to Provident's operating account (identified as number "9191").  At approximately the same time, $10,396,150 was transferred from the PRI bank account to 10 separate Provident entities' accounts and used to make dividend payments and distributions to earlier investors in the 10 Provident Entities.  The $1.75 million transferred into the operating account was used to pay general overhead and business expenses.  The SEC has verified that the amounts in the Provident spreadsheet are accurately reflected in the Provident Entities' bank records.

91.     Investors would have found it important to know that their funds were not being invested as represented in the Provident Securities offering materials and that their funds were being used to repay earlier investors.

F.    **The Truth is Revealed**

92.     Provident announced that it would cease accepting new investors into any of the open Provident Securities offerings on or about January 22, 2009.

93.     Provident announced suspension of dividend payments for all of the Provident Entities on or about January 29, 2009.  No dividends have been paid on the Provident Securities since that date.

94.     On April 30, 2009, investors were informed that dividend payments and redemptions would continue to be suspended, but that dividends would continue to accrue.

95.     The financial condition of Provident Entities has deteriorated and the remaining assets are wholly insufficient to meet the Provident Entities' financial obligations, including to Plaintiffs and the members of the Class and Idaho Subclass.  Thus, Plaintiffs believe and therefore allege that their investments in Provident Securities are virtually worthless.

96.     On June 22, 2009, Provident and its subsidiaries, including the Provident Entities, filed a voluntary petition for Chapter 11 bankruptcy in the bankruptcy court for the Northern District of Texas. (Case No. 09-33886).

97.     On July 1, 2009 the SEC commenced an enforcement action against Provident, PAM, the Provident Entities, Melbye, Coughlin and Harrison, alleging various federal securities law violations.  On the same day, the Commission filed motions for entry of a preliminary injunction and an *ex parte* order freezing assets and other emergency relief, including appointment of a receiver.

98.     On July 2, 2009, the court entered an Order Granting Temporary Restraining Order, Appointing Receiver, Freezing Assets, Staying Litigation, Prohibiting the Destruction of Documents and Accelerating Discovery (the "TRO").

99.     At page 2 of the TRO, the Court found the following:

The Court finds that the Commission has made a sufficient and proper showing in support of the relief granted herein, as required by Section 20(b) of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. §77t(b)] and Section 21(d) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. §78u(d)] by evidence establishing a *prima facie* case of and a strong likelihood that the Commission will prevail at trial on the merits and that the defendants, and each of them, directly or indirectly, have engaged in and, unless restrained and enjoined by order of this Court, will continue to engage in acts, practices, and courses of business constituting violations of Section 17(a) of the Securities Act [15 U.S.C. §§ 77(e) and 77q(a)], Section 10(b) of the Exchange Act [15 U.S.C. §78j(b), and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

100.     Defendant Hofhines sent letters to Provident Securities investors informing them that Hofhines and Summit would "continue to monitor the Provident Shale situation and are committed to providing updates on the bankruptcy and SEC actions when appropriate."

101.     Securities America also sent letters advising Provident Securities Investors that Provident and certain of its affiliates filed chapter 11 bankruptcy petitions.

102.     Provident and the Provident Entities and their affiliates remain in bankruptcy and/or receivership.

## VII.     COUNTS

### COUNT I

### Violation of Section 12(a)(1) of the Securities Act
### Against Defendants Hofhines, Summit, and Securities America

103.     Plaintiffs repeat and reallege each and every allegation above as if set forth fully herein.

104.    This Count is brought by Plaintiffs against Defendants Hofhines, Summit, and Securities America for violations of Section 12(a)(1) of the Securities Act, 15 U.S.C. § 77l(a)(2), on behalf of all persons who purchased or otherwise acquired Provident Securities on or after November 25, 2008.

105.    Defendants Hofhines, Summit, and Securities America and their affiliates solicited the sale of, and offered and sold unregistered Provident Securities and made use of the instruments of transportation or communications in interstate commerce or of the United States mails in so doing, in violation of Section 5 of the Securities Act, 15 U.S.C. § 77(e).

106.    Defendants Hofhines, Summit, and Securities America were sellers within the meaning of the federal securities laws.  Defendants Hofhines, Summit, and Securities America solicited the purchase of Provident Securities by Plaintiffs, and the other members of the Class, including the Idaho Subclass, motivated at least in part by their desire to serve their own financial interests or those of Provident or the Provident Entities.

107.    Defendants Hofhines, Summit, and Securities America received financial rewards, including but not limited to substantial commissions and fees from the sale of Provident Securities.  In so doing, Defendants Hofhines, Summit, and Securities America made use of the instruments of transportation or communications in interstate commerce or of the mails.

108.    The Provident Securities were offered to the public in violation of the registration requirements of the Securities Act, and did not satisfy the requirements for an exemption from registration.

109.    The Provident Securities were offered pursuant to a single, continuous and integrated offering, through which money from later offerings was commingled with funds received from earlier offerings, and vice versa.

CLASS ACTION COMPLAINT
Page 31

110.    While there were a number of different entities that offered securities through private placements, in reality, the offering constituted a single plan of financing.  The offering documents and terms are very similar across all of Provident's offerings.

111.    Thus, the offerings for all of the Provident Securities were structured and effected in a similar manner, and constituted a single, integrated offering pursuant to Rule 502 of Regulation D, 17 C.F.R. § 320.501-502.  The offerings for the Provident Securities formed part of a single plan of financing, involved the issuance of the same class of securities, were made at or about the same time, involved the same type of consideration received, and were for the same general purposes.

112.    The Provident Securities offering materials provided to investors contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and concealed and failed to disclose material facts in violation of the federal securities laws.  Specifically, Defendants failed to disclose that returns would not be paid from revenues generated from investments in oil and gas properties, but that investor funds were commingled and investor funds raised in later offerings were used to pay "dividends" and "returns of capital" to earlier Provident investors.

113.    These Defendants' offering of Provident Securities also involved numerous solicitations of unaccredited investors.

114.    Defendants Hofhines, Summit, and Securities America failed to provide the required audited or other financial statements.  Had these financial statements been provided, they would have revealed to potential investors the fact that returns would not be paid from revenues generated from investments in oil and gas properties, but that investor funds were

CLASS ACTION COMPLAINT
Page 32

commingled and investor funds raised in later offerings were used to pay "dividends" and "returns of capital" to earlier Provident investors.

115.   By virtue of the conduct alleged herein, Defendants Hofhines, Summit, and Securities America and their affiliates violated Section 12(a)(1) of the Securities Act, 15 U.S.C. §77l(a)(1), and Plaintiffs and the other members of the Class, including the Idaho Subclass, have suffered damages as a result.

116.   Plaintiffs and the other members of the Class, including the Idaho Subclass, who purchased or otherwise acquired Provident Securities on or after November 25, 2008, have the right to rescind and recover the consideration paid for the Provident Securities, together with interest thereon, and elect to rescind and tender their Provident Securities to Defendants.  Any Plaintiffs or other members of the Class, including the Idaho Subclass, who have sold their Provident Securities are entitled to rescissory damages.

117.   This claim is timely for those Plaintiffs and members of the Class, including the Idaho Subclass, who purchased or otherwise acquired their Provident Securities on or after November 25, 2008, on whose behalf this Count is brought.  Not more than one year has elapsed since those Plaintiffs and members of the Class, including the Idaho Subclass, purchased or otherwise acquired their Provident Securities, and not more than three years has passed since those Provident Securities were offered to the public.

118.   This Count is not grounded in fraud.

## COUNT II

### Violations of Section 12(a)(2) of the Securities Act
### Against Defendants Hofhines, Summit, and Securities America

119.   Plaintiffs repeat and reallege each and every allegation above as if set forth fully herein.

120.     This Count is brought by Plaintiffs against Defendants Hofhines, Summit, and Securities America for violations of Section 12(a)(2) of the Securities Act, 15 U.S.C. § 77l(a)(2), on behalf of all persons who purchased or otherwise acquired Provident Securities on or after November 25, 2006.

121.     The Provident Securities were offered pursuant to a single, continuous and integrated offering, through which money from later offerings was commingled with funds received from earlier offerings, and vice versa.

122.     While there were a number of different entities that offered securities through private placements, in reality, the offering constituted a single plan of financing.  The offering documents and terms are very similar across all of Provident's offerings.

123.     Defendants Hofhines, Summit, and Securities America and their affiliates were sellers, offerors and/or solicitors of sales of Provident Securities.  The Provident Securities were offered to the public pursuant to PPMs.  Because registration of the Provident Securities was required under the Securities Act, Plaintiffs and each of the members of the Class, including the Idaho Subclass, were entitled to receive a prospectus in the form contemplated under the Securities Act in connection with a registered offering of securities.  The PPMs provided to each purchaser of Provident Securities constituted a prospectus within the meaning of Section 12 of the Securities Act.

124.     Defendants Hofhines, Summit, and Securities America and their affiliates were sellers within the meaning of the Securities Act because they solicited the purchase of Provident Securities by Plaintiffs and other members of the Class, including the Idaho Subclass, motivated at least in part by a desire to serve their own financial interests.  By doing so, Defendants Hofhines, Summit, and Securities America and their affiliates received financial rewards,

CLASS ACTION COMPLAINT
Page 34

1

2   including but not limited to substantial commissions on the sales.  Defendants Hofhines, Summit,

3   and Securities America and their affiliates used means and instrumentalities of interstate

4   commerce and the United States mails.

5          125.    The PPMs provided to Plaintiffs and other members of the Class, including the

6   Idaho Subclass, by Defendants Hofhines, Summit, and Securities America and their affiliates,

7   contained untrue statements of material facts, omitted to state other facts necessary to make the

8   statements made not misleading, and concealed and failed to disclose material facts in violation

9   of the federal securities laws.  Specifically, Defendants failed to disclose that returns would not

10  be paid from revenues generated from investments in oil and gas properties, but that investor

11  funds were commingled and investor funds raised in later offerings were used to pay "dividends"

12  and "returns of capital" to earlier Provident investors.

13         126.    Defendants Hofhines, Summit, and Securities America and their affiliates owed to

14  Plaintiffs and members of the Class, including the Idaho Subclass, the duty to make a reasonable

15  and diligent investigation of the statements contained in the PPMs with respect to the offering of

16  Provident Securities, to ensure that such statements were true and that there was no omission of

17  material fact necessary to prevent the statements contained therein from being misleading.

18  Defendants Hofhines, Summit, and Securities America and their affiliates did not make a

19  reasonable investigation or possess reasonable grounds to believe that the statements contained

20  and incorporated by reference in the PPMs at the time of the Provident Securities offerings were

21  true and without omissions of material fact and were not misleading.  Had Defendants Hofhines,

22  Summit, and Securities America and their affiliates exercised reasonable care, they would have

23  known of such omissions.

24

25

26

27

28

CLASS ACTION COMPLAINT
Page 35

127.     Plaintiffs and the other members of the Class, including the Idaho Subclass, purchased or otherwise acquired Provident Securities pursuant to the materially untrue and misleading PPMs and did not know, or in the exercise of reasonable diligence could not have known, of the untruths and omissions contained therein.

128.     By virtue of the conduct alleged herein, Defendants Hofhines, Summit, and Securities America and their affiliates violated Section 12(a)(2) of the Securities Act, 15 U.S.C. §77l(a)(1), and Plaintiffs and the other members of the Class, including the Idaho Subclass, have suffered damages as a result.

129.     Plaintiffs and the other members of the Class, including the Idaho Subclass, who purchased or otherwise acquired Provident Securities on or after November 25, 2008, have the right to rescind and recover the consideration paid for the Provident Securities, together with interest thereon, and elect to rescind and tender their Provident Securities to Defendants.  Any Plaintiffs or other members of the Class, including the Idaho Subclass, who have sold their Provident Securities are entitled to rescissory damages.

130.     This claim is timely for those Plaintiffs and members of the Class, including the Idaho Subclass, who purchased or otherwise acquired their Provident Securities on or after November 25, 2006, on whose behalf this Count is brought.  Not more than three years has passed since the Provident Securities were offered to the public, and not more than one year has elapsed from the time when Plaintiffs discovered or reasonably could have discovered the facts upon which this Count is based until the time of the filing of this action.

131.     This Count is not grounded in fraud.

## COUNT III

### Violations of Section 15 of the Securities Act
### Against Defendants Hofhines, Ameriprise and the Securities America Entities

132.   Plaintiffs repeat and reallege each and every allegation above as if set forth fully herein.

133.   This Count is brought by Plaintiffs against Defendants Hofhines, Ameriprise, and the Securities America Entities for violations of Section 15 of the Securities Act, 15 U.S.C. § 77o, on behalf of all persons who purchased or otherwise acquired Provident Securities on or after November 25, 2006.

134.   The Provident Securities were offered pursuant to a single, continuous and integrated offering, through which money from later offerings was commingled with funds received from earlier offerings, and vice versa.

135.   While there were a number of different entities that offered securities through private placements, in reality, the offering constituted a single plan of financing.  The offering documents and terms are very similar across all of Provident's offerings.

136.   Defendant Hofhines was a controlling person of Defendant Summit.

137.   Defendant Ameriprise was an owner and control person of its subsidiaries, the Securities America Entities, and a controlling person of the remaining Defendants.

138.   Defendant Securities America Financial Corporation was an owner and controlling person of its subsidiaries, and a controlling person of Defendants Hofhines and Summit.

139.   Defendants Securities America was a controlling person of Defendants Hofhines and Summit.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

140.    Defendants Hofhines, Ameriprise and the Securities America Entities were culpable participants in the violations of Section 12 of the Securities Act as alleged above, based on their ownership interest in and control of other Defendants and having otherwise participated in the process which allowed the offering to be successfully completed.

141.    This claim is timely for those Plaintiffs and members of the Class, including the Idaho Subclass, who purchased or otherwise acquired their Provident Securities on or after November 25, 2006, on whose behalf this Count is brought.  Not more than three years has passed since the Provident Securities were offered to the public, and not more than one year has elapsed from the time when Plaintiffs discovered or reasonably could have discovered the facts upon which this Count is based until the time of the filing of this action.

142.    This Count is not grounded in fraud.

## COUNT IV

### Violation of the Idaho Uniform Securities Act - I.C. §§ 30-14-509, 30-14-301 Against Defendants Hofhines, Summit and Securities America

143.    Plaintiffs repeat and reallege each and every allegation above as if set forth fully herein.

144.    This Count is brought by Plaintiffs against Defendants Hofhines, Summit, and Securities America for violations of the Idaho Uniform Securities Act ("IUSA"), I.C. §30-14-509(b), on behalf of all Plaintiffs and other Idaho Subclass members who purchased or otherwise acquired Provident Securities on or after November 25, 2008.

145.    The Provident Securities are "securities" as defined by the applicable provisions of the IUSA, I.C. §§ 30-14-101 *et seq.*

CLASS ACTION COMPLAINT
Page 38

146.    The Provident Securities were offered pursuant to a single, continuous and integrated offering, through which money from later offerings was commingled with funds received from earlier offerings, and vice versa.

147.    While there were a number of different entities that offered securities through private placements, in reality, the offering constituted a single plan of financing.  The offering documents and terms are very similar across all of Provident's offerings.

148.    Defendants Hofhines, Summit, and Securities America marketed, solicited, and sold Provident Securities to Plaintiffs and the other members of the Idaho Subclass.

149.    Defendant Hofhines, Summit, and Securities America did not register the Provident Securities in accordance with the requirements set forth under the IUSA.

150.    Nor were the Provident Securities exempt from registration for the reasons set forth above, including for the reasons set forth in Count I, and did not qualify for an exemption from registration under the IUSA, I.C. §§ 30-14-201 through 30-14-203.

151.    By virtue of the conduct alleged herein, Defendants Hofhines, Summit, and Securities America and their affiliates violated IUSA §§ 30-14-301 and 30-14-509(b), and Plaintiffs and the other members of the Idaho Subclass, have suffered damages as a result.

152.    Plaintiffs and the other members of the Idaho Subclass who purchased or otherwise acquired Provident Securities on or after November 25, 2008, have the right to rescind and recover the consideration paid for the Provident Securities, together with interest thereon, and elect to rescind and tender their Provident Securities to Defendants.  Any Plaintiffs or other members of the Idaho Subclass who have sold their Provident Securities are entitled to rescissory damages.

153.     In addition, Plaintiffs and the other members of the Idaho Subclass who purchased or otherwise acquired Provident Securities on or after November 25, 2008, have the right to interest, costs, reasonable attorneys' fees, and such other relief provided for by the IUSA.

154.     This claim is timely for those Plaintiffs and the other members of the Idaho Subclass who purchased or otherwise acquired their Provident Securities on or after November 25, 2008, on whose behalf this Count is brought.  Not more than one year has elapsed since those Plaintiffs and the other members of the Idaho Subclass purchased or otherwise acquired their Provident Securities.

155.     This Count is not grounded in fraud.

## COUNT V

### Violation of the Idaho Uniform Securities Act, I.C. §§ 30-14-509 Against Defendants Hofhines, Summit, and Securities America

156.     Plaintiffs repeat and reallege each and every allegation above as if set forth fully herein.

157.     This Count is brought by Plaintiffs against Defendants Hofhines, Summit, and Securities America for violations of the IUSA, I.C. §30-14-509(b), on behalf of all Plaintiffs and other Idaho Subclass members who purchased or otherwise acquired Provident Securities on or after November 25, 2004.

158.     The Provident Securities are "securities" as defined by the applicable provisions of the IUSA, I.C. §§ 30-14-101 et. seq.

159.     The Provident Securities were offered pursuant to a single, continuous and integrated offering, through which money from later offerings was commingled with funds received from earlier offerings, and vice versa.

CLASS ACTION COMPLAINT
Page 40

160.    While there were a number of different entities that offered securities through private placements, in reality, the offering constituted a single plan of financing.  The offering documents and terms are very similar across all of Provident's offerings.

161.    Defendants Hofhines, Summit, and Securities America marketed, solicited, and sold Provident Securities to Plaintiffs and the other members of the Idaho Subclass.

162.    Defendants Hofhines, Summit, and Securities America marketed, solicited, and sold Provident Securities by means of untrue statements of a material fact or omission to state materials fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.  Specifically, Defendants failed to disclose that returns would not be paid from revenues generated from investments in oil and gas properties, but that investor funds were commingled and investor funds raised in later offerings were used to pay "dividends" and "returns of capital" to earlier Provident investors.  Plaintiffs and the other members of the Idaho Subclass did not know, and in the exercise of reasonable care could not have known, of the untruths or omissions.

163.    By virtue of the conduct alleged herein, Defendants Hofhines, Summit, and Securities America and their affiliates violated IUSA § 30-14-509(b), and Plaintiffs and the other members of the Idaho Subclass have suffered damages as a result.

164.    Plaintiffs and the other members of the Idaho Subclass who purchased or otherwise acquired Provident Securities on or after November 25, 2004, have the right to rescind and recover the consideration paid for the Provident Securities, together with interest thereon, and elect to rescind and tender their Provident Securities to Defendants.  Any Plaintiffs or other members of the Idaho Subclass who have sold their Provident Securities are entitled to rescissory damages.

165.     In addition, Plaintiffs and the other members of the Idaho Subclass who purchased or otherwise acquired Provident Securities on or after November 25, 2004, have the right to interest, costs, reasonable attorneys' fees, and such other relief provided for by the IUSA.

166.     This claim is timely for those Plaintiffs and the other members of the Idaho Subclass who purchased or otherwise acquired their Provident Securities on or after November 25, 2004, on whose behalf this Count is brought.  Not more than five years has elapsed since those Plaintiffs and other members of the Idaho Subclass purchased or otherwise acquired their Provident Securities, and not more than two years has elapsed from the time when Plaintiffs discovered or reasonably could have discovered the facts upon which this Count is based until the time of the filing of this action.

167.     This Count is not grounded in fraud.

## COUNT VI

### Violations of the Idaho Uniform Securities Act, I.C. §§ 30-14-509(g)
### Against Defendants Hofhines, Ameriprise and the Securities America Entities

168.     Plaintiffs restate and incorporate by reference all of the allegations set forth in the preceding paragraphs of this Complaint.

169.     Plaintiffs repeat and reallege each and every allegation above as if set forth fully herein.

170.     This Count is brought by Plaintiffs against Defendants Hofhines, Ameriprise, and the Securities America Entities for violations of the IUSA, I.C. §30-14-509(b), on behalf of all Plaintiffs and other Idaho Subclass members who purchased or otherwise acquired Provident Securities on or after November 25, 2004.

CLASS ACTION COMPLAINT
Page 42

171.    The Provident Securities were offered pursuant to a single, continuous and integrated offering, through which money from later offerings was commingled with funds received from earlier offerings, and vice versa.

172.    While there were a number of different entities that offered securities through private placements, in reality, the offering constituted a single plan of financing.  The offering documents and terms are very similar across all of Provident's offerings.

173.    Defendant Hofhines was a controlling person of Defendant Summit.

174.    Defendant Ameriprise was an owner and control person of its subsidiaries, the Securities America Entities, and a controlling person of the remaining Defendants.

175.    Defendant Securities America Financial Corporation was an owner and controlling person of its subsidiaries, and a controlling person of Defendants Hofhines and Summit.

176.    Defendants Securities America was a controlling person of Defendants Hofhines and Summit.

177.    Defendants Hofhines, Ameriprise and the Securities America Entities were culpable participants materially aided in the IUSA violations as alleged above, based on their ownership interest in and control of other Defendants and having otherwise participated in the process which allowed the offerings to be successfully completed.

178.    As "controlling persons" under the IUSA, Defendants Hofhines, Ameriprise, and the Securities America Entities are liable, jointly and severally, with and to the same extent as all Defendants in relation to the sale of the Provident Rule Securities.

179.    Plaintiffs and the other members of the Idaho Subclass who purchased or otherwise acquired Provident Securities on or after November 25, 2004, have the right to rescind

CLASS ACTION COMPLAINT
Page 43

and recover the consideration paid for the Provident Securities, together with interest thereon, and elect to rescind and tender their Provident Securities to Defendants.  Any Plaintiffs or other members of the Idaho Subclass who have sold their Provident Securities are entitled to rescissory damages.

180.    In addition, Plaintiffs and the other members of the Idaho Subclass who purchased or otherwise acquired Provident Securities on or after November 25, 2004, have the right to interest, costs, reasonable attorneys' fees, and such other relief provided for by the IUSA.

181.    This claim is timely for those Plaintiffs and the other members of the Idaho Subclass who purchased or otherwise acquired their Provident Securities on or after November 25, 2004, on whose behalf this Count is brought.  Not more than five years has elapsed since those Plaintiffs and the other members of the Idaho Subclass purchased or otherwise acquired their Provident Securities, and not more than two years has elapsed from the time when Plaintiffs discovered or reasonably could have discovered the facts upon which this Count is based until the time of the filing of this action.

182.    This Count is not grounded in fraud.


## COUNT VIII

### Violation of the Idaho Consumer Protection Act, I.C. § 48-601, *et seq.*
### Against Defendants Hofhines, Summit and Securities America

183.    Plaintiffs restate and incorporate by reference all of the allegations set forth in the preceding paragraphs of this Complaint.

184.    This Count is brought by Plaintiffs against Defendants Hofhines, Summit, and Securities America for violations of the ICPA, I.C. § 48-601, *et. seq.* ("ICPA"), on behalf of all

Plaintiffs and other Idaho Subclass members who purchased or otherwise acquired Provident

Securities and whose cause of action accrued under this statute on or after November 25, 2007.

185.    The Provident Securities are "goods" under applicable provisions of the ICPA,

I.C. § 48-602(6).

186.    The conduct and representations of Defendants Hofhines, Summit, and Securities

America involving the Provident Securities were made in the conduct of "trade" or "commerce"

as such terms are defined by the ICPA, I.C. § 48-602(2).

187.    The Defendants' conduct in connection with the Provident Securities constituted

unfair or deceptive acts or practices in violation of the ICPA, in that Defendants, without

limitation:

      A.    Represented that the Defendants possessed sponsorship, approval,

qualifications, and/or license that they did not have;

      B.    Represented the Provident Securities as having sponsorship, approval,

characteristics, and/or benefits that they did not have;

      C.    Represented the Provident Securities to be of a particular standard or

quality when they were not; and

      D.    Constituted other acts or practices which are otherwise misleading or false

to the consumer.

188.    Defendants knew, or in the exercise of due care should have known, that the

above enumerated conduct, without limitation, was unfair and/or deceptive.

189.    As a direct and proximate result of the Defendants' violation of the ICPA,

Plaintiffs and the other members of the Idaho Subclass have suffered damages as a result.

CLASS ACTION COMPLAINT
Page 45

190.     Plaintiffs and the other members of the Idaho Subclass who purchased or otherwise acquired Provident Securities and whose cause of action accrued under this statute on or after November 25, 2007, have the right to void the transaction and recover the consideration paid for the Provident Securities, together with interest thereon, or to restitution, and elect to void the transaction and tender their Provident Securities to Defendants.  Any Plaintiffs or other members of the Idaho Subclass who have sold their Provident Securities are entitled to damages.

191.     In addition, Plaintiffs and the other members of the Idaho Subclass who purchased or otherwise acquired Provident Securities and whose cause of action accrued under this statute on or after November 25, 2007, have the right to costs, reasonable attorneys' fees, and such other relief provided for by the ICPA.

192.     This claim is timely for those Plaintiffs and other members of the Idaho Subclass whose cause of action accrued under this statute on or after November 25, 2007.

193.     This Count is not grounded in fraud.

## VIII.   DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(a), Plaintiff hereby demands a trial by jury of all issues so triable.

## IX.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief and judgment, as follows:

A.     Determining that this action is a proper class action, certifying the Class and Idaho Subclass, and certifying Plaintiffs as Class and Idaho Subclass Representatives under Rule 23 of the Federal Rules of Civil Procedure and Plaintiffs' counsel as Class Counsel;

B.     Awarding compensatory damages in favor of Plaintiffs and the other Class and Idaho Subclass members against all Defendants, jointly and severally, for all damages sustained

CLASS ACTION COMPLAINT
Page 46

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.      Awarding Plaintiffs and the Class and Idaho Subclass their reasonable costs and expenses incurred in this action, including counsel fees and expert fees, and interest; and

D.      Allowing Plaintiffs and other members of the Class and Idaho Subclass who still hold their Provident Securities to tender their notes to Defendants Hofhines, Summit, and Securities America;

E.      Awarding Plaintiffs and the other members of the Class and Idaho Subclass rescission and/or rescissory damages; and

F.      Such other and further relief as the Court may deem just and proper.

DATED THIS 25th day of November, 2009.

GREENER BURKE SHOEMAKER P.A.


By____*/s/ Soo Y. Kang*_____
        Richard H. Greener
        Soo Y. Kang

KELLER ROHRBACK L.L.P.
        Lynn L. Sarko
        Michael D. Woerner
        Elizabeth A. Leland

Attorneys for Plaintiffs

CLASS ACTION COMPLAINT
Page 47

# DO NOT DELETE THIS PAGE